FILED

2018 Aug-03  AM 11:53
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GREGORY MINARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.:** |
| | ) | |
| **vs.** | ) | _____ |
| | ) | |
| **WALMART, INC.** | ) | **PLAINTIFF DEMANDS** |
| **formerly WAL-MART STORES, INC.** | ) | **TRIAL BY STRUCK JURY** |
| | ) | |
| **Defendant.** | ) | |

---

## COMPLAINT

---

## JURISDICTION AND VENUE

1.     This is a complaint for legal and equitable relief to redress violations
by the Defendant of the Plaintiff's rights secured by:

   a.   Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended;

   b.   Title VII of the Civil Rights Act of 1964, (Title VII"), as
   amended, 42 U.S.C. § 2000e, *et seq.*

   c.   The Age Discrimination in Employment Act of 1967("ADEA")
   as amended, 29 U.S.C. §§ 621 *et seq.*;

   d.   Alabama Age Discrimination in Employment Act ("AADEA"),
   Ala. Code 1975, §25-1-20; and

2.     Federal subject matter jurisdiction exists pursuant to:

      a.     28 U.S.C. §§ 1331, 1343(a)(3) and 1367;

      b.     Title VII, 42 U.S.C. §2000e-5(f)(3); and

      c.     The ADEA, 29 U.S.C. §626(c)(1);

**PARTIES**

3.     The Plaintiff, Gregory Minard, (hereinafter "Plaintiff" and/or "Minard") is a male person over the age of fifty.  Minard is a resident of Hoover, Alabama, Jefferson County, Alabama.  Plaintiff was employed by Sam's Club as a General Manager at the Irondale, Alabama location.

4.     Defendant Walmart, Inc. formerly Wal-Mart Stores, Inc. is engaged in the operation of retail, wholesale and other units in various formats around the world. The Company offers an assortment of merchandise and services at everyday low prices. The Company operates through three segments: Walmart U.S., Walmart International and Sam's Club.

5.     The Sam's Club segment includes the warehouse membership clubs in the United States as well as samsclubs.com.

6.     The Company operates approximately 11,600 stores under 59 banners in 28 countries and e-commerce Websites in 11 countries.

7.    Defendant employs at least fifteen (15) persons within the meaning of Title VII, 42 U.S.C. § 2000e(b) and at least twenty (20) persons within the meaning of the ADEA, 29 U.S.C. §630(b).

8.    Defendant Walmart is an enterprise engaged in commerce or in the production of goods for commerce with the meaning of 29 U.S.C. §203(s)(1).

## VENUE

9.    Venue lies within the Northern District of Alabama. 28 U.S.C. §1391; 42 U.S.C. §2000e-5(e)(3); 29 U.S.C. § 626(c)(1).

## NATURE OF ACTION

10.    Plaintiff brings this action to redress unlawful practices and acts of intentional discrimination that Walmart, as his employer or former employer, committed.

11.    This action seeks to redress grievances resulting from the actions of Defendant, its agents, servants, and employees committed with respect to Plaintiff's employment and otherwise.

12.    Plaintiff also seeks back pay, reinstatement (or front pay in lieu of reinstatement should the Court conclude reinstatement is not feasible), liquidated damages, and compensatory and punitive damages, as appropriate.  Additionally, Plaintiff seeks attorney's fees, expenses, and costs as allowed by statute.

## ADMINISTRATIVE PROCEDURES

13.    On April 12, 2018, within 180 days of learning of the acts of discrimination of which he complains, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, ("EEOC"), Charge No. 420-2018-02006, alleging age, race discrimination and retaliation.  (See Exhibit A).

14.    On May 7, 2018, the EEOC mailed a Dismissal and Notice of Rights on Charge No. 420-2017-02637, that was received on May 11, 2018. (See Exhibit B).

15.    This action is timely filed because it was filed within 90 days from May 11, 2018.

16.    Plaintiff has satisfied all conditions precedent to bring this action.

## STATEMENT OF FACTS

17.    Plaintiff Greg Minard, an African American male, is 59 years of age.

18.    Plaintiff was employed with one of Walmart, Inc.'s three segments, Sam's Club, as a General Manager, at its Irondale, Alabama retail location.

19.    Plaintiff worked with Walmart for over 32 years at the time he was terminated without notice or provocation in October 2017.

20.    Plaintiff's direct supervisor was Marshall Bacote. Bacote is a Supervisor and Market Manager located at the Walmart corporate office in Atlanta, Georgia.  Bacote, acting in concert with Walmart, terminated Plaintiff in October

2017 as part of a plan and scheme to effectuate discriminatory and retaliatory practices of firing older and minority employees to create an advantage for younger white employees and not pay bonuses and other compensation due minority employees.

21.     Plaintiff was a salaried employee and classified as exempt from overtime.

22.     Plaintiff routinely worked between 50-70 hours a week, depending on staffing requirements, workload, and the season of the year.

23.     Plaintiff was never disciplined nor counseled for violating company policy during his thirty-two (32) years of employment with Walmart.

24.     Plaintiff received promotions and raises during his employment with Walmart.

25.     Plaintiff received commendations and acknowledgments for his management of the Sam's location at Irondale and the store was commended for being one of the top stores in overall sales and truck load sales.

26.     In 2017, the Irondale Sam's Club that Plaintiff managed had accomplished all of its monthly and annual budget numbers as established by the corporate office and Plaintiff was on target to be paid a bonus estimated over $70,000 at the end of January 2018.

27.     Plaintiff was terminated on October 19, 2017, without any notice or warning.

28.     Shortly after Plaintiff's termination, Walmart announced it was closing the Irondale Sam's Club and transferred managerial and hourly employees to other stores and also severed some team members, but paid them a severance.

29.     In actuality, Walmart planned the closing of the Irondale Sam's Club and sixty-two (62) other Sam's Clubs as early as January 2017 and team members began hearing rumors of the closing by May 2017.

30.     Walmart issued several public relation statements during this time period boasting that due to President Trump's corporate tax reform measures it was awarding raises and providing bonuses up to $1,000 to all of its employees. Walmart's statements were meant to mislead the public and its employees. (See Exhibit C).

31.     In fiscal year 2017, Walmart had pre-tax profits of about $20.5 billion and paid an effective federal tax rate of around 30 percent.  With a new corporate tax rate of 21 percent, the corporate tax cut is worth at least $1.85 billion to Walmart every year.

32.     In 2012, Plaintiff had a corporate customer, a large grocery distributer in the Birmingham foodservice industry, approach him as the General Manager about buying large quantities of french fries.  The quantities were trailer truck loads.

33.    The first time Dave Wood of Wood Fruitticher, the grocery distributor placed an order for french fries it was for quantities of ten trailer truck loads.

34.    Plaintiff contacted the corporate office about the sale and sought advice and guidance on how to process that large of an order.

35.    Plaintiff was told by his manager that the customer would need to pre-pay for his order and pick it up immediately when the delivery arrived at the warehouse.

36.    For over five years Plaintiff operated in this same manner with his customer pre-ordering french fries, paying in advance and picking up the truck loads of french fries when they arrived at the warehouse.

37.    In August 2017, a new District Loss Prevention Manager, Athena Rushforth, informed Plaintiff it was against Walmart policy for a customer to pay in advance of receiving their merchandise.  Plaintiff explained he had been told five (5) years ago that the company would incur significant financial risk for truckloads of french fries if the customer decided not to pick up the order or pay and he was to secure pre-payment.  Plaintiff stated he understood the new procedure and would comply going forward.

38.    In September 2017, Wood Fruitticher came in to order french fries again and Plaintiff informed Mr. Wood that he could no longer pre-pay for the french fries, that Walmart's policy had changed and he would be required to pay when the

french fries arrived at Sam's Club. Mr. Wood had no issue with the change in the process. The french fries were ordered and when the merchandise arrived, Mr. Wood paid and picked up his delivery of french fries.

39. On October 6, 2017, Defendant required Plaintiff to give written statement to loss prevention as part of an investigation about the process of selling french fries the past five years to Wood Fruitticher. Plaintiff provided the information that the corporate office had instructed him that he was to have pre-payment on such large orders.

40. At no time did Defendant inform Plaintiff that it was against the Company's policy to request pre-payment until August 2017, when Plaintiff was assigned a new district manager.

41. Defendant never showed Plaintiff nor trained Plaintiff on the policy on large orders and whether pre-payment was required or against policy.

42. Plaintiff was informed in August, 2017, by the District Loss Prevention Manager that pre-payment of large orders was against policy, however, Defendant never provided the policy to Plaintiff.

43. Sam's Senior Corporate HR Manager asked Plaintiff how the process he was managing with a pre-pay customer was any different from online ordering. Plaintiff explained there is no difference and both situations require pre-payment prior to the customer receiving the goods.

8

44.    In October 2017, the inventory for Plaintiff's store was over, not under, its inventory.  Plaintiff attempted to find where the overage could have occurred since the store was not showing that it had lost money on inventory or was holding inventory.

45.    Defendant informed Plaintiff that the overage could not be determined and most likely was corporate error.

46.    Defendant terminated Plaintiff on October 19, 2017 for gross misconduct and also terminated Plaintiff's health insurance on the same day.  Gross misconduct is the label Walmart gives for a termination that involves serious integrity issues.

47.    The former loss prevention manager for Defendant had warned Plaintiff that the new loss prevention manager was after him and to watch his back.

48.    The new loss prevention manager is a white female.  After Defendant terminated Plaintiff, Wood Fruitticher was told to start shopping at the Trussville location of Sam's, managed by a white female.

49.    Since being terminated, Plaintiff applied for unemployment benefits and, over the objection of the Company, was successful in disputing the Company's allegations that, he had violated Company policy requiring customer pre-pay for large truck loads of merchandise.

50.     Walmart has subjected Plaintiff to unlawful discrimination due to his race and age by disciplining Plaintiff for following a directive in place for over five (5) years and terminating Plaintiff for gross misconduct because he followed the procedure Walmart put in place.

51.     Walmart fabricated reasons to terminate Plaintiff so it could terminate Plaintiff for gross misconduct so it could avoid paying Plaintiff his bonus and a severance due to his 32 years of service.

52.     Walmart knew months prior to Plaintiff's termination that it was going to close the Irondale location as Walmart targeted sixty-three (63) Sam's Club stores, predominantly in Black communities, to close.

53.     Walmart transferred younger and white employees to other Sam's Club or Walmart facilities when it closed stores.

54.     Walmart relocated younger and white employees to open positions prior to closing a facility or arranged a transfer to another location after closing.

55.     Walmart denied Plaintiff a transfer to open positions at Lakeshore and Trussville locations due to his age and race.

## COUNT ONE

### SECTION 1981 RACE DISCRIMINATION, HARASSMENT AND RETALIATION

56.     Minard realleges and incorporates by reference paragraphs 1-55, with the same force and effect as if fully set forth in specific detail herein below.

57.   This is a claim against Defendant to redress the unlawful employment practices of racial discrimination, harassment, and retaliation protected by 42 U.S.C. § 1981, as amended.

58.   This is a claim against Defendant for the intentional and illegal discrimination of Minard because of his race.

59.   Minard is an African American male and a member of a protected minority class.

60.   Minard was at all times qualified to perform his job duties as a Store Manager. Walmart treated Minard differently and adversely due to his race, African American.

61.   Walmart created false reasons to discipline and terminate Plaintiff. Walmart treated Plaintiff adversely in the terms and conditions of his employment as compared to Minard's Caucasian and younger coworkers. Walmart was motivated by Minard's race to treat him less favorably and deny equal pay, benefits and terms of employment. Minard voiced complaints about the racial discrimination and harassment to his managers and Walmart's Human Resources Office. Minard's complaints were ignored and inequitable conditions of employment were applied to Minard that were not provided to his younger Caucasian co-workers or managers at other locations.

62.   Walmart created and condoned racially hostile and harassing work environment.  Walmart required Minard to work in a racially hostile environment filled with intimidation, ridicule and differing terms and conditions by his white supervisors.

63.   Minard complained about the race discrimination and suffered retaliation that included unfair discipline and termination. Walmart did not follow its policy of progressive discipline by virtue of terminating Minard for a policy violation that Walmart previously directed that Minard follow.

64.   As a proximate result of Defendant' unlawful discrimination, Minard has suffered financial and economic loss, loss of employment, shame, humiliation, emotional and physical injury and distress and physical and emotional trauma.

65.   Minard seeks declaratory and injunctive relief, an award of back pay, front pay, loss of benefits, interest, reinstatement, loss of career opportunity, compensatory and punitive damages for mental anguish and physical injury, costs, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT TWO

### TITLE VII RACE DISCRIMINATION AND HARASSMENT AGAINST DEFENDANT

66.   Minard adopts and realleges paragraphs 1-55 as if fully set forth herein.

67.   Minard is an African American male and a member of a protected class.

68.    Defendant Walmart targeted Minard based on his race and subjected him to adverse treatment, less pay and disciplinary action.

69.    Defendant subjected Minard to adverse employment actions, including suspension and termination.

70.    Minard suffered less preferential terms, conditions, and pay of employment than similarly-situated Caucasian male employees.

71.    Defendant subjected Minard to a hostile work environment on the basis of his race.

72.    Defendant's conduct was objectively and subjectively severe or pervasive.

73.    Defendant's conduct materially altered Minard's terms and conditions of employment.

74.    Minard complained to the superintendent about the racial discrimination and harassment.

75.    Defendant failed to investigate or remedy the racial discrimination, racial harassment and conduct.

76.    Defendant's conduct proximately caused Minard to suffer extreme emotional distress, physical injury, embarrassment, humiliation, financial loss, loss of employment opportunity, and other pecuniary and non-pecuniary losses.

77.     Minard seeks declaratory and injunctive relief, reinstatement, an award of lost wages and benefits, back pay, front pay, compensatory and punitive damages, damages for loss of career opportunity, emotional distress damages, physical injury damages, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT THREE

### AGE DISCRIMINATION, HARASSMENT AND RETALIATION

78.     Minard realleges and incorporates by reference paragraphs 1-55 with the same force and effect as if fully set forth in specific detail herein below.

79.     This Count addresses those claims seeking to redress the unlawful employment practices of age discrimination, harassment, and retaliation conducted by Defendant's agents and employees and ratified by the Defendant in violation of federal and state laws that prohibit age discrimination in the workplace.

80.     This is an action to redress grievances resulting from acts of Defendant, its agents, servants, and employees committed with respect to Minard's employment and for a permanent injunction restraining Defendant from maintaining a policy and practice of harassing and discriminating against Minard and other persons similarly situated on account of age.

81.     Minard is over the age of 50 and a member of a protected group.

82.     Minard is qualified to perform the job duties of General Store Manager and has conducted duties and responsibilities consistent with the Sam's Club General Store Manager in a satisfactory manner with Walmart for fourteen (14) years.

83.     Walmart denied Minard pay raises and bonuses due to Minard's age.

84.     Walmart subjected Minard to discriminatory treatment and harassment based on his age.  Defendant Walmart devised a scheme and plan to treat older managers harshly, demean them, and force them to resign.  When the older employees would not resign, Walmart would use fabricated reasons to terminate them.

85.     Walmart treated young employees more favorably with respect to the terms, conditions, and pay of their employment.

86.     Walmart used Minard's french fry incident to terminate him when younger employees were not terminated.

87.     Walmart terminated Minard without any notice.  Walmart replaced Minard with a younger, less-experienced, white female general manager with less seniority at Walmart.

88.     As a proximate result of Defendant' unlawful discrimination, harassment, and retaliation, Minard suffered from different terms, conditions, and pay than his younger co-workers during his employment.

89.     Such unlawful employment practices proximately caused Minard to suffer financial duress, wage and benefit loss, and financial loss for which he claims damages.

90.     Minard seeks declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front pay, interest, liquidated damages, costs,  attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT FOUR

### INVASION OF PRIVACY

91.     Minard realleges and incorporates by reference paragraphs 1-55 with the same force and effect as if fully set forth in specific detail herein below.

92.     This is a claim against Defendant Walmart for the invasion of Minard's right to privacy under the laws of the State of Alabama.

93.     Defendant invaded Minard's personal and emotional sanctum by harassing and discriminating against him due to his age and race, by accusing and placing him in a false and unfavorable light, and by falsely accusing him of violating the policies of Walmart. Defendant falsely accused Minard of not following procedure and terminated him for gross misconduct.   Gross misconduct is the terminology Walmart uses to terminate when an employee's integrity has been an issue, such as lying, stealing or sexually harassing employees.

94.     Defendant's conduct proximately caused Minard to suffer embarrassment, humiliation, physical injury, pain and suffering, loss of reputation, emotional distress, trauma, loss of pay and benefits, and mental anguish for which he claims damages.

95.     Minard seeks declaratory and injunctive relief, reinstatement, award of compensatory and punitive damages, mental anguish, costs, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT FIVE

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

96.     Minard realleges paragraphs 1 - 55, as if fully set out herein.

97.     This is a claim against Walmart arising under the laws of the State of Alabama prohibiting the intentional infliction of emotional distress.

98.     The conduct of the Defendant, by fabricating a reason to investigate, discipline and then terminate the Plaintiff, terminating Plaintiff for gross misconduct, was extreme, outrageous and beyond the bounds of decency. Walmart had put in place the pre-pay policy five (5) years previously and required Plaintiff to follow that policy. Walmart then changed its pre-pay policy abruptly and used the change to terminate Plaintiff even though Walmart knew it was closing the Sam's Club that Plaintiff managed. Walmart terminated Plaintiff so it would not have to pay Plaintiff his earned bonus, a severance package after thirty-two (32) years of

employment or offer Plaintiff relocation to another facility. When Plaintiff sought employment benefits available to him and after 32 years of exemplary employment, he was refused. Defendant denied Plaintiff continued employment, transfers to open positions, application and interview to these open positions, and short and long-term disability benefits. Plaintiff was denied the ability to stay employed and covered by his insurance and other employment benefits until he found comparable employment to maintain his health insurance.

99.   Defendant's conduct is not condoned by society and should not go unpunished.

100.   Defendant's conduct is intentional and willful and employed to inflict severe emotional distress upon Plaintiff.

101.   The Defendant's conduct proximately caused Minard to suffer embarrassment, physical injury, pain and suffering, loss of pay and benefits, financial distress, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which he claims damages as set out below.

102.   Minard seeks declaratory and injunctive relief, award of compensatory and punitive damages, mental anguish, physical pain and suffering, loss of career opportunity, costs, attorney's fees, and any and all such other relief the trier of fact may assess.

## COUNT SIX

### NEGLIGENT AND WANTON HIRING, TRAINING, SUPERVISION AND RETENTION

103.    Minard realleges and incorporates by reference paragraphs 1-55, 93 and 98 with the same force and effect as if fully set forth in specific detail herein below.

104.    This is a claim arising under the laws of the State of Alabama to redress the negligent and wanton hiring, training, supervision and retention of Defendant's employees.

105.    Defendant had a duty to provide a reasonably safe, non-hostile and non-discriminatory work environment to Minard and other employees who were African American and over the age of forty (40).  Defendant had actual notice of the actions complained of by Minard.

106.    Defendant, having such knowledge, negligently and wantonly failed to train and discipline those employees who actively discriminated, harassed, retaliated and conspired against Minard on an ongoing basis, and failed to protect Minard from further injury.

107.    Defendant failed to administer its own policies against harassment and discrimination and such behavior which created a hostile working environment for Minard.  Walmart failed to regularly and clearly communicate such policies to its managers, and other agents and employees of Walmart.

108.    Minard's working conditions created by these managers and Walmart were adverse, hostile, and intended to cause Minard to be set up to be terminated after serving Walmart for over 32 years.    These actions were intended to cause Minard financial, physical, and emotional harm so that he would quit or retire, because Walmart perceived Minard to an old African American manager that it could terminate for integrity issues.

109.    As a proximate result of the Defendant's unlawful and unconstitutional conduct, Minard suffered the following injuries: different terms and conditions of employment than other employees, severe emotional distress, physical injury, pain and suffering, humiliation, mental anguish, trauma and embarrassment, and financial loss.

110.    Minard seeks declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front pay, interest, compensatory and punitive damages, loss of career opportunity, humiliation and embarrassment, mental anguish, costs,  attorneys' fees, and any and all such other relief the trier of fact may assess.

WHEREFORE, Plaintiff respectfully requests this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with it, from engaging further in its discriminatory treatment on the basis of age and race;

B.      Order Defendant to make Plaintiff whole by providing appropriate front pay, back pay, with prejudgment interest, back pay with prejudgment interest, in amounts to be proved at trial, reinstatement, promotions, relocation to comparable position and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, compensatory damages, punitive and liquidated damages;

C.      Award the Plaintiff compensatory, punitive and liquidated damages;

D.      Award the Plaintiff his costs and expenses herein, including reasonable attorney fees; and,

E.      Award such other and further relief which this Court deems necessary and proper.

<strong>PLAINTIFF DEMANDS TRIAL BY STRUCK JURY</strong>

Respectfully submitted,

Alicia K. Haynes ASB-8237-E23A
Attorney for Plaintiff

<u>**OF COUNSEL**</u>:
HAYNES & HAYNES, P.C.
1600 Woodmere Drive
Birmingham, Alabama  35226
Phone:  (205) 879-0377
Fax:  (205) 879-3572
E-mail:  akhaynes@haynes-haynes.com

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL:**

**DEFENDANT'S ADDRESS:**

Walmart, Inc.
Registered Agent:  The Corporation Company
124 West Capitol Avenue, Suite 1900
Little Rock, AR 72201

Walmart, Inc.
702 SW 8th Street
Bentonville, AR 72716

**PLAINTIFF'S ADDRESS:**

Mr. Gregory Minard
c/o Alicia K. Haynes
Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, Alabama  35226