UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GREGORY MINARD, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) **Civil Action Number** ) **2:18-cv-01222-AKK** |
| SAM'S EAST, INC., | ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Before the court is Sam's East, Inc.'s motion to reconsider the October 22, 2018 order finding its motion to dismiss moot. Doc. 23. Sam's East notes correctly that the court inadvertently failed to rule on its motion to dismiss two of Gregory Minard's state law claims, which Minard repleaded in his amended complaint, doc. 14. Upon further review, the motion to reconsider, doc. 23, is due to be granted, and Minard's outrage claim is due to be dismissed.

### I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions"

1

or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations omitted) (internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id*.; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. FACTUAL BACKGROUND[1]

Minard is a 59-year-old African American man who worked for Sam's Club for over 32 years, most recently at the Irondale, Alabama location as General Manager. Doc. 14 at 4. Minard allegedly never received any disciplinary violations prior to his discharge and received praise for his performance, including for overseeing one of the top stores in overall sales. *Id.* at 5. In 2017, the Irondale location was on track to meet and/or exceed annual budget numbers, with Minard slated to earn a $70,000 bonus that year due to the store's performance. *Id.* at 6. Minard never received the bonus and lost his position instead.

For a five year period prior to his discharge, purportedly in compliance with prior policy, Minard allowed customer Dave Wood, acting on behalf of a local grocery distributor, to pre-pay for truckloads of French fries and to subsequently pick up the order when the store received the fries. *Id.* at 7. In August 2017, Athena Rushford, District Loss Prevention Manager, informed Minard about a new company policy prohibiting customers from pre-paying for their purchases. *Id.* at 6. Two months later, the company required Minard to provide a written statement to loss prevention due to a discrepancy in inventory and because of an investigation into Wood's large orders. *Id.* at 8. After the investigation, Sam's East

---

[1] "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (*quoting GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *See Iqbal*, 556 U.S. at 678-79.

allegedly informed Minard that it could not determine the source of the overage and attributed it to corporate error. *Id.* at 9. Nonetheless, the investigation led to Minard's discharge for "gross misconduct" involving "serious integrity issues," which also led to the termination of his health insurance. *Id*. at 9-10.

## III. ANALYSIS

Minard initially filed this suit against Wal-Mart, Inc. (an improperly named defendant) alleging various discrimination, harassment, and retaliation claims under Section 1981 of the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981, Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e-2, the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1) ("ADEA"), and the Alabama Age Discrimination in Employment Act, Ala. Code § 25-1-20 *et seq.* (1975) ("AADEA"). Doc. 1. Minard also asserted state law claims, including invasion of privacy, intentional infliction of emotional distress (IIED)[2], and negligent or wanton hiring, supervision, training, and retention. *Id.* Identifying themselves as the proper defendant, Sam's East responded to the complaint with a motion to dismiss all of Minard's claims. Doc. 7. Minard subsequently filed an amended complaint dropping all of his retaliation and harassment claims and the invasion of privacy claim. Doc. 14. However, he retained his outrage and

---

[2] Alabama's tort of outrage "is essentially equivalent to what many states refer to as 'intentional infliction of emotion distress.'" *K.M. v. Alabama Department of Youth Services,* 360 F.Supp.2d 1253, 1259, n. 4 (M.D.Ala.2005). Accordingly, the court will refer to Minard's IIED claim as an outrage claim.

negligent hiring claims. As a result, the amended complaint did not moot Sam's East's motion to dismiss these two claims.

**A. Outrage Claim**

Minard's outrage claim is based on the purported fabrication of a pretextual reason to wrongfully investigate and discharge him, denial of transfers to open positions, denial of health benefits affecting his spouse's medical treatment, and interference with his dependents' ability to obtain prompt medical attention. Doc. 14 at 21-22. At issue here is whether these allegations rise to the level of extreme, outrageous, or atrocious actions that are utterly intolerable in a civilized society. For the reasons below, the court finds that Mindard has failed to plead a plausible claim for outrage.

To recover under outrage, Minard must demonstrate conduct that "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." G*reen Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala.1990) (citing *American Road Service Co. v. Inmon*, 394 So. 2d 361 (Ala.1980); *see also Hill v. Cundiff*, 797 F.3d 948, 983 (11th Cir. 2015). Relevant here, in light of the Alabama Supreme Court decision in *Wilson v. Univ. of Alabama Health Servs. Found., P.C.*, No. 1160654, 2017 WL 6397654 (Ala. Dec. 15, 2017),[3] the proper

---

[3] The Alabama Supreme Court recently decided that outrage claims are "not necessarily limited to three categories" that the Court has commonly recognized as appropriate for such a claim: "(1) wrongful conduct within the context of family burials; (2) an insurance agent's coercing an

inquiry at this stage is whether the alleged conduct was "so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society." 2017 WL 6397654, at *3 (citing *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000)). Thus, Minard must "set forth each of the elements of the tort of outrage in [his] complaint, and [make] a showing that [he] is entitled to relief." *Thomas v. Williams*, 21 So. 3d 1234, 1240 (Ala. Civ. App. 2008).

Basically, Minard maintains that he easily satisfies the relevant elements for an outrage claim because his wrongful discharge denied him employment, the opportunity for a $70,000 bonus, and health insurance coverage, which affected his family's access to necessary medical treatment and prompt medical attention. Doc. 18 at 5. A review of the complaint, however, shows that Minard has not alleged sufficient facts to demonstrate that Sam's East had the requisite knowledge about his family's medical needs, intended to affect his family's medical needs, or engaged in willful, malicious conduct. *See Rice v. United Ins. Co. of Am.,* 465 So. 2d 1100 (Ala. 1984) (finding conceivable outrage when an employer was aware of plaintiff's pregnancy and took drastic measures to force her to voluntarily take disability leave which resulted in emotional distress and a miscarriage); *cf. Estate of Reed v. Ponder Enterprises, Inc.*, No. 1:11CV554-CSC, 2012 WL 1031487, at *7 (M.D. Ala. Mar. 27, 2012) (finding no outrage claim even though the employer

---

insured into settling an insurance claim; and (3) egregious sexual harassment." *Id.* at *3 (citing *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000)).

was aware of plaintiff's medical conditions and subjected her to harsh working conditions). Rather, the complaint alleges only that Minard's family suffered these consequences due to his discharge, doc. 14 at 20-22, which is insufficient to plead the requisite knowledge about his family's medical needs.

In that respect, this case is distinguishable from *Rice*, where the Alabama Supreme Court found a plausible outrage claim after the employer "organized an attempt to force [the employee] to take disability leave rather than to work throughout her pregnancy[,] . . . put pressure on her husband to use his influence with her to encourage her to take disability leave[,] . . . repeatedly falsely accused her in the presence of co-employees and clients of incompetence[,]. . . [withheld] vital business information[,] . . . [and] wrongfully terminated [her] . . ." 465 So. 2d 1100 at 1102. (internal punctuation omitted). According to the *Rice* Court, "all the above mentioned behavior was calculated to force or coerce her into voluntarily taking disability leave from work during her pregnancy." *Id.* Here, however, there are no allegations of a calculated ploy to force Minard to leave his job and deprive Minard's family of their health coverage.

The reliance on *Rice* is also misplaced because courts have not applied its holding to Title VII claims in the absence of similarly extreme circumstances. For example, in a case from the Middle District of Alabama, where an employee became severely depressed, her medical condition further deteriorated after her discharge, and she sadly died, the court noted that although the defendants "were

7

willfully malicious,"[4] if "the tort of outrage were recognized under the circumstances alleged in this case, it would mean that the tort of outrage would exist in every [] case when an employer intentionally discriminates or retaliates against [an] employee—a result not consistent with the 'extremely limited' nature of the tort of outrage in Alabama." *Estate of Reed,* 2012 WL 1031487 at *7; *see also Walker v. ITT Educational Services, Inc.*, 2013 WL 979087, *3–4 (N.D. Ala. Mar. 13, 2013) (finding that a termination in violation of the FMLA failed to state an outrage claim, as it included no allegations of an "onslaught of harassment" or other "extreme and outrageous" circumstances).

Moreover, there are no allegations in the complaint about purported public policy violations. Generally, in assessing whether a discharge rises to an outrage claim, courts examine whether the "plaintiff's discharge contravenes public policy, particularly if the discharge was the culmination of a protracted pattern of discrimination in violation of public policy." *Lees v. Sea Breeze Health Care Ctr., Inc.*, 391 F. Supp. 2d 1103, 1107 (S.D. Ala. 2005). Examples of how Alabama courts have construed this public policy standard include plaintiffs complaining about an intrusion on federally protected rights related to gender discrimination or about retaliation for exercising the fundamental right to marry. *See Rice,* 465 So.

---

[4] Apparently, the employer, despite purportedly knowing of the employee's "medical condition and need for accommodation," had "intentionally subjected [her] to false accusations, hot temperatures, and long periods of standing, heavy lifting, and wrongful termination." *Id.*

8

2d at 1102 (gender discrimination); *Cunningham v. Dabbs*, 703 So. 2d 979, 983 (Ala. Civ. App. 1997) (fundamental right to marry).

Based on this case law, the court is not persuaded that Sam's East's conduct rises to the level of outrageous and atrocious conduct or that it contravened public policy. An employer's malicious or false allegations alone to purportedly concoct a discharge are insufficient to rise to outrageous conduct under Alabama law. *See Thomas*, 21 So. 3d at 1240 (holding that the defendant's intentional and malicious phone call to the plaintiff's employer with the intent of seeking her termination failed to allege an outrage claim at the motion to dismiss stage); *Bogus v. City of Birmingham, Alabama*, No. 2:17-CV-00827-TMP, 2018 WL 1746527, at *17 (N.D. Ala. Apr. 11, 2018) (noting that gossip, alleged irregularities in investigations, and verbal lashing were not sufficiently extreme and outrageous that no person could be expected to endure it). Accordingly, as pleaded, Sam's East's conduct was not "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Little v. Robinson,* 72 So. 3d 1168, 1173 (Ala. 2011). Therefore, this claim is due to be dismissed.

**B. Negligent or Wanton Hiring, Supervision, Training, and Retention**

Based on the contention that the outrage claim fails and Minard has no other common law tort claims remaining, Sam's East also argue for the dismissal of the negligent/wanton hiring, training, supervision, and retention claim. Doc. 7 at 11-

12. Indeed one of the elements of a valid negligent hiring claim is that "the plaintiff must demonstrate that (1) the employee committed a tort recognized under Alabama law, . . . ."[5] *Edwards v. Hyundai Motor Mfg. Alabama, LLC*, 603 F. Supp. 2d 1336, 1357 (M. D. Ala. 2009). Under Alabama law, "[a] party alleging negligent or wanton hiring, supervision, training, and retention must prove the underlying wrongful conduct of employees." *Thornton v. Flavor House Prod., Inc.*, No. 1:07-CV-712-WKW, 2008 WL 5328492, at *19 (M.D. Ala. Dec. 19, 2008) (citing *Voyager Ins. Cos. v. Whitson*, 867 So.2d 1065, 1073 (Ala. 2003)). "Furthermore, the underlying wrongful conduct must constitute 'a common-law, Alabama tort'[6] committed by the employee, not on a federal cause of action such as Title VII." *Short v. Mando Am. Corp.*, 805 F. Supp. 2d 1246, 1277 (M.D. Ala. 2011) (internal citations omitted).

Although Minard's outrage claim fails, dismissal of his negligent or wanton hiring, training, or supervision claim is not warranted because the claim is also premised on the state law AADEA discrimination claim, which Sam's East has not moved to dismiss. Docs. 14 at 23; 18 at 8-9. Thus, because "Alabama law expressly prohibits age discrimination in employment in the [AADEA]," the court finds that Minard has sufficiently alleged a plausible claim of negligent or wanton

---

[5] The other elements are that "(2) the employer had actual notice of this conduct or would have gained such notice if it exercised due and proper diligence, and (3) the employer failed to respond to this notice adequately." *Id.*

[6] "[T]he potential exception to this common-law tort rule…is presented by virtue of the Alabama Age Discrimination in Employment Act (the 'AADEA')." *Murdoch v. Medjet Assistance, LLC*, 294 F. Supp. 3d 1242, 1280, n. 43 (N.D. Ala. 2018).

training and supervision premised on a subordinate's age discrimination. *See King v. CVS Caremark Corp.*, 2 F. Supp. 3d 1252, 1269, n.8 (N.D. Ala. 2014) (finding that because plaintiff's AADEA claim survived summary judgment and the "legal uncertainty over whether the Supreme Court of Alabama would equate violations of the AADEA with wrongful conduct appropriate to support a negligent/wanton training theory under Alabama law," the negligent/wanton claim similarly survived).

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the motion for reconsideration, doc. 23, is **GRANTED,** and Minard's outrage claim is **DISMISSED WITHOUT PREJUDICE.** Minard may proceed with his negligent or wanton hiring and other claims in his amended complaint, doc. 14.

**DONE** the 6th day of December, 2018.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE